IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

                    :

**TIMOTHY THIRY**          :

                    :

Plaintiff,             :

                    :

         - against -     :  Civ. Action No.:

                    :  Hon. Judge:

**BOARD OF REGENTS OF THE**  :  Magistrate Judge:
**UNIVERSITY OF MICHIGAN,**  :
**CAMIE MUNSELL, STEVE BRABBS,**  :
**AND SHARON CURRY**.     :

                    :

Defendants.         :

                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## COMPLAINT AND JURY DEMAND

        There is no other civil action between these parties arising out of the same transaction or occurrences as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.

      NOW COMES the plaintiff Timothy Thiry ("Plaintiff"), by and through his undersigned attorney, and states for his complaint as follows:

## NATURE OF THE ACTION

      1.    This is an employment discrimination case in which Defendants violated the federal Rehabilitation Act by (1) actively discriminating against the Plaintiff; (2) encouraging and/or acquiescing in a hostile environment aimed at the

Page 1

Plaintiff because of his disability; (3) failing to provide the Plaintiff with reasonable accommodation; (4) failing to engage in the interactive process in good faith; (5) retaliating against the Plaintiff when he reported the discrimination; and (6) constructively terminating the Plaintiff's employment in retaliation.

2.     The Plaintiff also alleges that the defendants deprived Plaintiff of his rights under the United States Constitution, in violation of 42 U.S.C. §1983, by (1) attempting to restrict Plaintiff's protected First Amendment rights; and (2) retaliating against Plaintiff for exercising his protected First Amendment rights.

## THE PARTIES

3.     Plaintiff is an individual residing in Washtenaw County, Michigan.

4.     Defendant, University of Michigan, is a State of Michigan public university located in Ann Arbor, Washtenaw County, Michigan, and the Board of Regents is its governing body (hereinafter "the UM").

5.     Until July 29, 2021, Plaintiff was employed by the UM as an electrician in their Health Sciences Region.

6.     Defendant Camie Munsell ("Munsell") is employed by the UM in Ann Arbor, Washtenaw County, Michigan, as a Regional Manager of Facilities Operations responsible for the Health Sciences Region.

7.     Munsell was Plaintiff's supervisor.

8.      Defendant Steven Brabbs ("Brabbs") is employed by the UM in Ann Arbor, Washtenaw County, Michigan, as Director, Maintenance Services.

9.      Defendant Sharon Curry ("Curry") is employed by the UM in Ann Arbor, Washtenaw County, Michigan, a Human Resources Generalist.

10.     Curry was the primary point of contact between Plaintiff and Human Resources department.

11.     The events described in this lawsuit occurred in Washtenaw County, Michigan.

12.     At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of the Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 704.

13.     At all times material hereto, the UM was an "employer" covered under Section 504.

14.     Defendant is a "program or activity" as defined by the Rehabilitation Act, i.e., "a college, university, or other postsecondary institution." 29 U.S.C.A. § 794(b)(2)(A).

15.     Defendant receives Federal financial assistance through student loans, educational grants, and Pell Grants, *inter alia*.

16.     By doing so, Defendant UM has waived sovereign immunity under the Rehabilitation Act.

## **JURISDICTION AND VENUE**

17.     This Honorable Court has subject matter jurisdiction under Section 504 of the Rehabilitation Act, giving this Court original jurisdiction under 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1337 (jurisdiction for laws relating to commerce).

18.     This Honorable Court also has subject matter jurisdiction over Plaintiff's Constitutional claims under and pursuant to 28 USC § 1331 (federal question jurisdiction), 28 USC § 1343(a)(3) (jurisdiction over deprivation of Constitutional rights claims), and 42 USC § 1983 (deprivation of Plaintiff's rights under the United States Constitution).

19.     This Court has personal jurisdiction over the defendant the UM because it is a branch of the State of Michigan formed under the Michigan Constitution that is physically present in the District.

20.     This Court has personal jurisdiction over all other defendants because they reside in and engage in regular and systematic business and other activities within the State of Michigan; notably, they are all located in Washtenaw County, Michigan or are employed by the UM in Washtenaw County, Michigan.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because all defendants (i) reside in or are deemed to be a resident within the Eastern District of Michigan and (ii) a substantial part of the events or omissions giving rise to the claims occurred in this District.

## CONDITIONS PRECEDENT

22.     The Plaintiff has exhausted his administrative remedies by filing a charge document with the Equal Employment Opportunity Commission ("EEOC").

23.     On March 2, 2022, the EEOC issued a Determination and Notice of Rights.  (Exh. A, *Determination and Notice of Rights*.)

## FACTUAL ALLEGATIONS

24.     The Plaintiff started working for the UM on or about November 15, 1992, as a food service supervisor.

25.     The Plaintiff transferred into skilled trades and worked with the UM as both an apprentice and a journeyman electrician.

26.     The Plaintiff was union electrician.

27.     The Plaintiff was forced to resign from the UM on or about July 29, 2021, under threat of termination and loss of post-employment benefits.

28.     The Plaintiff had many different supervisors over his nearly thirty (30)

year career with the UM.

29.     The Plaintiff had never before been threatened with termination by the UM.

30.     The Plaintiff suffers from substance use disorder as it is defined in the Diagnostic and Statistical Manual of Mental Disorders, fifth edition ("DSM-5").

31.     This is a qualifying disability under Section 504 of the Rehabilitation Act.

32.     The Plaintiff sought treatment for his substance use disorder in or about February 2021.

33.     The Plaintiff's healthcare providers suggested that the Plaintiff receive in-patient, residential treatment.

34.     At this point in time, Plaintiff had reported to Munsell for over a year, and he had a reasonable working relationship with her.

35.     The UM arranged for the Plaintiff to take time off for in-patient, residential treatment.

36.     The Plaintiff received in-patient, residential treatment, beginning in February 2021.

37.     The Plaintiff returned to work at the UM in or about April 2021.

38.     Palpable stress is contraindicated for those suffering from substance

use disorder, especially those new to recovery.

39.     Plaintiff clearly communicated this to Munsell and Curry, *inter alia*.

40.     When Plaintiff returned from in-patient, residential treatment for his substance use disorder, Munsell exhibited a wholesale change in attitude towards the Plaintiff.

41.     From the day he returned, Munsell was hostile towards the Plaintiff.

42.     On information and belief, Munsell made repeated derogatory comments about Plaintiff's substance use disorder to others.

43.     On information and belief, Munsell called the Plaintiff an alcoholic in front of other employees of the University of Michigan on multiple occasions, and wrongly accused him of smelling of alcohol.

44.     On information and belief, Munsell disclosed Plaintiff's confidential medical information to others, without his permission, by disclosing he sought treatment for substance use disorder.

45.     Between April 2021 and July 29, 2021, Munsell treated the Plaintiff with disrespect in public.

46.     Between April 2021 and July 29, 2021, Munsell berated the Plaintiff in front of other employees.

47.     Between April 2021 and July 29, 2021, Munsell interrupted Plaintiff

whenever he talked about any issue.

48.     Between April 2021 and July 29, 2021, Munsell criticized Plaintiffs work in an unwarranted fashion.

49.     Previously acceptable forms of communications, such as informal text messages about both work- and non-work-related topics, suddenly caused Munsell to feign offense.

50.     Munsell's subordinate supervisors also created a hostile environment for the Plaintiff, most notably Jordan Rider.

51.     On information and belief, Rider told other skilled tradespeople at the UM that the Plaintiff was a drunk.

52.     On information and belief, Rider told other skilled tradespeople at the UM that Plaintiff was schizophrenic.

53.     On information and belief, Rider told other skilled tradespeople at the UM that Plaintiff had dementia caused by alcohol.

54.     Rider is not a psychologist, psychiatrist, or medical doctor, and had no basis for making such statements other than animus.

55.     Rider repeated these untrue, derogatory, and defamatory comments to Curry, a purported human resources generalist.  (*See* Exh. B).

56.     On information and belief, Rider and Munsell encouraged other

employees to contribute to the hostile work environment, either explicitly or through inaction.

57.    During the time period in question, Plaintiff had a meeting with Curry and Brabbs, along with his union President, Clint Fink, to discuss the treatment the Plaintiff received from Munsell.

58.    Plaintiff asserted to human resources that Munsell "despised" him.

59.    The only response from human resources was Brabbs telling Clint Fink that he had no prior personal knowledge that Munsell despised Plaintiff.

60.    On or about June 3, 2021, Plaintiff informed Munsell that he intended to seek redress through the UM Office of Institutional Equity ("OIE").

61.    In less than three months, a 28-year employee of the UM was subjected to such objectionable conduct that he went to OIE.

62.    Plaintiff believed that Munsell, herself, was creating a discriminatory and hostile workplace for the Plaintiff, due to his disability.

63.    Plaintiff believed that Munsell was also allowing and encouraging others to create a workplace hostile to the Plaintiff.

64.    Plaintiff believed that Munsell was showing favoritism to others by allowing them to break rules.

65.    Plaintiff requested accommodations from Munsell and Curry, *inter*

*alia*, seeking working conditions that would lower his palpable stress.

66.    On or about June 8, 2021, Plaintiff went to the OIE to discuss the hostile work environment.

67.    OIE informed Plaintiff that adverse job action, including termination, could result from Plaintiff's anticipated complaint.

68.    Plaintiff had no desire to get anyone fired, so he was reluctant to file an official complaint.

69.    On or about June 10, 2021, Plaintiff informed his human resources generalist, Curry, that he had addressed his concerns about the hostile environment with OIE and was considering his options.  (*See* Exh. C, E-*mail chain between Human Resources and OIE.*)

70.    On information and belief, Curry promptly shared this information with Munsell.

71.    On information and belief, Munsell was concerned with Plaintiffs discussions with OIE, because Munsell was concerned an OIE complaint would have an adverse impact on her position.

72.    Ed Wilson, a subordinate supervisor reporting to Munsell, told Plaintiff that Munsell was furious that Plaintiff had gone to OIE.

73.    On June 11, 2021 at 4:08:07 PM EDT, Plaintiff sent Munsell and e-

mail containing only the subject line: "I hope everyone's ducks are in a row!" *See* Exh. D, *e-mail chain commencing June 11, 2021*.

74.     On June 11, 2021 at 6:06 PM, Munsell forwarded it to Curry and Stephen Brabbs, stating: "Seriously you guys.  This is making me nervous.  I'm really not feeling comfortable."

75.     Munsell's June 11th e-mail is the first contrivance in a series of contrivances.  No reasonable person would perceive any type of threat from someone saying, "I hope everyone's ducks are in a row!"

76.     On information and belief, Munsell knew that a complaint to OIE would be damaging to her career, and that she needed to take steps against Plaintiff in order to derail the complaint to OIE.

77.     Munsell began a campaign of retaliation against Plaintiff, that culminated in the Plaintiff's forced resignation.

78.     On June 12, 2021, Plaintiff e-mailed Munsell six more innocuous one-line e-mails:

- Have a great weekend! (6/12/21 at 3:00:01 PM EDT);

- I was wondering if it's ok for an employee to drive a university vehicle when signed out for the day? (6/12/21 at 3:03:55 PM EDT);

- Showing favoritism could be considered a failure of management!

(6/12/21 at 3:06:46 PM EDT);

- Maybe I can spend an hour a day every day so I don't have to pay for parking.  (6/12/21 at 3:10:19 PM EDT);

- I could have a few of your favorites fired on Monday for what they said to me in your precense [sic].  I don't want to do that.  I only want to be treated fairly by my manager.  (6/12/21 at 3:16:48 PM EDT);

- Righting [sic] your own rules is always a bad idea!  (6/12/21 at 3:21:13 PM EDT);

- If you're on your boat with Sharron I apologize for bothering you. (6/12/21 at 3:22:29 PM EDT).

(*Id.*)

79.    On June 12, 2021, at 4:07 p.m., Munsell forwarded the six innocuous e-mails to Brabbs and Curry with the note:

I have given Megan both of his vehicle information in case he shows up here tonight. I have a very dear friend that just has hip replacement surgery Wednesday and his wife is out of town on business and we are making Him dinner tonight so he can't come here. It's pathetic. That I have to have not only protect myself but my daughter and friends have to live in fear.

I already told Steve I'm filing harassment charges against him and I expect he is either terminated for threatening and intimidating emails and creating f [sic] a hostile work environment or he is moved or I am. I should not be asked by the u of m to work and live like this.

With regards to his comments. I have no idea what he is talking about.  If

Page 12

there are people leaving early and walking to their cars…I'm unaware.   It's COvid.  I only have maybe 6 people that come to the shop at night.  Unless you all expect me to stand at the top of a building with binoculars watching each and every single employee.  Instead, I chose to be in the shop at night.  Talk to employees and see how their day went.

80.    The over-reactions in Munsell's June 12, 2021, e-mail is apparent as no reasonable person would have construed any of the e-mails from the Plaintiff as even remotely threatening or harassing.

81.    The string read as a whole is an attempt by the Plaintiff to get his supervisor to address his concerns about discrimination, hostile environment, and favoritism.

82.    Plaintiff wanted Munsell to stop discriminating against him based on his substance use disorder.

83.    Plaintiff wanted Munsell to quit showing preference to workers who did not suffer from substance use disorder.

84.    Plaintiff wanted Munsell to get control over her staff and stop the harassment and hate-speech directed at the Plaintiff.

85.    Promptly upon returning to work on or about June 15, 2021, Munsell put her retaliatory scheme to work.

86.    Munsell complained to human resources that she felt threatened by the Plaintiff's innocuous e-mails.

Page 13

87.     Curry escalated the issue to Brabbs.

88.     On information and belief, Curry and Brabbs omitted any reference of the OIE investigation occasioned by Plaintiff's discussion with OIE from their subsequent harassment investigation of the Plaintiff.

89.     Both Curry and Brabbs were aware of the OIE investigation.

90.     The result of this contrived investigation, precipitated as retaliation for Plaintiff's complaint to OIE, was a Notice of Suspension dated July 19, 2021.  *See* Exh. E, *Notice of Suspension*.

91.     Upon discussing the matter with his union, Plaintiff was informed that, if the UM terminated him, Plaintiff would lose some of his post-employment benefits.

92.     On the recommendation of his union, the Plaintiff resigned on July 29, 2021, after almost 29 years of employment by the UM.

93.     Not satisfied with Plaintiff's reluctant resignation, Munsell continued her contrived harassment allegations, filing a report with the Division of Public Safety and Security ("DPSS") on July 21, 2021.

94.     The DPSS investigated for roughly a month without issuing any type of recommendation.

95.     On information and belief, concerned that DPSS was not going to file

charges, Munsell fabricated an outrageous accusation that Plaintiff damaged her vehicles.

96.     On August 17, 2021, Munsell reported that she thought Plaintiff had damaged her three cars over the course of three weeks, although Munsell admitted that she had a doorbell camera that failed to show Plaintiffs presence at any time during that period.

97.     Based off of Munsell's latest allegation, DPSS issued a warrant request packet to the Washtenaw County Prosecutors Office for stalking on August 18, 2021.

98.     The Plaintiff in this case, Timothy Thiry, was arrested on August 19, 2021 and charged with the offense of stalking Munsell.

99.     The communications show that Mr. Thiry made repeated and at times vociferous complaints about the deteriorating work conditions he was facing.

100.    Although the ultimate accusation which caused the issuance of a warrant request package was vandalism, there was absolutely no evidence to support this accusation in discovery in Thiry's stalking case:  no camera evidence; no witnesses; no invoices for repairs; no statement of any mechanic that they thought the cars had been vandalized.

101.    On information and belief, both the UM human resources and Munsell

Page 15

failed to notify the DPSS and the Washtenaw County Prosecutor that a complaint by Thirty to OIE had been made and that it preceded Munsell's allegations of harassment.

102.   The Plaintiff never committed a violent act and never threatened violence.

103.   DPSS apparently was indifferent to filing a stalking charge until Munsell alleged that Thiry damaged her cars, even though Munsell provided no evidence to substantiate that false and defamatory accusation.

## COUNT I
## DISCRIMINATION UNDER THE REHABILITATION ACT

104.   Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

105.   Under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. §794(a).

106. The Rehabilitation Act incorporates the obligations and standards of the Americans with Disabilities Act of 1990 ("ADA"). 29 U.S.C. §794(d); *see also Keith v. County of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013).

107. Defendant UM is a recipient of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act.

108. Plaintiff was and is an individual with a disability under Section 504 of the Rehabilitation Act.

109. Defendant UM regarded Plaintiff as disabled within the meaning of Section 504 of the Rehabilitation Act, as evidenced by granting Plaintiff leave to receive his in-patient, residential substance use disorder treatment

110. Plaintiff has a record of a disability within the meaning of Section 504 of the Rehabilitation Act.

111. Defendant UM discriminated against Plaintiff in violation of 29 U.S.C. §794 of the Rehabilitation Act by allowing Munsell to adversely affect the opportunities and status of the Plaintiff after his return from treatment for his substance use disorder.

112. Defendant UM discriminated against Plaintiff on the basis of his disability in violation of the Rehabilitation Act, 29 U.S.C. §794, by purposely

creating a hostile environment within which Plaintiff had to work, with the intent to constructively terminate the Plaintiff, due to his disability.

113.   Defendant UM further discriminated against Plaintiff on the basis of his disability in violation of the Rehabilitation Act, 29 U.S.C. §794, by failing to eliminate the hostile elements of the work environment, as a reasonable accommodation when Plaintiff asked for assistance.

114.   Defendant UM's actions were intentional, willful, and in reckless disregard of Plaintiff's rights under the Rehabilitation Act.

115.   Plaintiff has suffered and continues to suffer damages as a result of Defendant's unlawful actions including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of employment benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of his choice.

**COUNT II**
**RETALIATION UNDER THE REHABILITATION ACT**

116.   Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

117.   The Rehabilitation Act prohibits retaliation against any individual because of his or her opposing practices made unlawful by the Acts or otherwise

seeking to enforce rights under the Act. *A.C. ex rel. J.C. v. Shelby County Board of Education*, 711 F.3d 687, 696–97 (6th Cir. 2013) (citing 42 U.S.C. § 12203; 29 U.S.C. § 794(a)).

118.   Plaintiff engaged in protected activity by texting and e-mailing Munsell to complain about discriminatory behavior aimed at him.

119.   Plaintiff engaged in protected activity by going to the OIE at the UM to complain about discriminatory behavior aimed at him.

120.   The Plaintiff suffered adverse employment action by being suspended. (*See* Exh. E.)

121.   The Defendant UM communicated clearly that the suspension was going to end in the termination of the Plaintiff.

122.   The Plaintiff's union so notified the Plaintiff, as was the intent of the UM.

123.   The Plaintiff suffered adverse employment action by being forced to resign under threat of termination.

124.   The Plaintiff's protected activity of going to the OIE and the adverse employment actions were temporally and causally connected.

125.   Defendant UM's actions were intentional, willful, and in reckless disregard of Plaintiff's rights under the Rehabilitation Act.

126.    Plaintiff has suffered and continues to suffer damages as a result of Defendant's unlawful actions including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of employment benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of his choice.

**COUNT III**
**VIOLATION OF 42 USC §1983**
**UNLAWFUL RESTRICTIONS OF PROTECTED ACTIVITY**

127.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

128.    Plaintiff enjoys rights under the First Amendment of the United States Constitution to engage in Free Speech, without being unreasonably fettered by state actors.

129.    The Defendant UM and its officials and employees, including Defendants Munsell, Brabbs, and Curry, attempted to unlawfully circumscribe Plaintiff's First Amendment rights by restricting the state actors to whom he could communicate and when he could communicate to them.

130.    Defendants Munsell, Brabbs, and Curry were acting under the color of authority of the State of Michigan.

131.    The conduct of Defendants Munsell, Brabbs, and Curry was under the color of statute, ordinance, regulation, custom, or usage under 42 U.S.C. §1983.

132.    In doing so, all Defendants deprived Plaintiff of his rights, privileges, and immunities secured by the Constitution and laws.

133.    The Defendants' actions aimed at the Plaintiff resulted in injury to the Plaintiff.

134.    The Defendants' conduct was knowing, intentional, willful, and in reckless disregard of Plaintiff's rights.

135.    Plaintiff has suffered and continues to suffer damages as a result of Defendant's unlawful actions including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of employment benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of his choice.

**COUNT IV**
**VIOLATION OF 42 USC §1983**
**RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY**

136.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

137.   Plaintiff enjoys rights under the First Amendment of the United States Constitution to be free of retaliation by persons acting under color of state law for engaging in protected free speech.

138.   Plaintiff spoke out and opposed employment practices which violated the law by the Defendant UM and its officials and employees, including Defendants Munsell, Brabbs, and Curry.

139.   Plaintiff's protected speech opposing unlawful employment practices included, but was not limited to, his complaints about (a) discrimination aimed at him as the result of his substance use disorder; (b) preferential treatment being given to employees who did not suffer from substance use disorder; (c) the intentionally hostile work environment that he was subjected to; (d) the unreasonable restrictions on his speech that attempted to get supervisors to remedy the situation; and (e) his requests for accommodations to lower his stress.

140.   Plaintiff reported his concerns to Defendants Munsell, Curry, and Brabbs, to no avail.

141.   Plaintiff engaged with OIE.

142.   Upon discovering that Plaintiff had engaged with OIE, Defendants Munsell, Brabbs, and Curry retaliated by beginning disciplinary proceedings against the Plaintiff.

143.    The disciplinary proceedings, themselves, alleged that by exercising his protected Free Speech rights, Plaintiff committed a terminable offense.

144.    The Defendant UM and its officials and employees, including Defendants Munsell, Brabbs, and Curry, unlawfully retaliated against Plaintiff for Plaintiff exercising his First Amendment rights.

145.    Defendants Munsell, Brabbs, and Curry were acting under the color of authority of the State of Michigan.

146.    The conduct of Defendants Munsell, Brabbs, and Curry was under the color of statute, ordinance, regulation, custom, or usage under 42 U.S.C. §1983.

147.    The Defendants' actions aimed at the Plaintiff resulted in injury to the Plaintiff.

148.    The Defendants' conduct was knowing, intentional, willful, and in reckless disregard of Plaintiff's rights.

149.    Plaintiff has suffered and continues to suffer damages as a result of Defendant's unlawful actions including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of employment benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of his choice.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff, by and through his attorney, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants and award Plaintiff the following:

A.  A declaratory judgment that Defendants (i) discriminated against Plaintiff in violation of Section 504 of the Rehabilitation Act; (ii) retaliated against Plaintiff in violation of Section 504 of the Rehabilitation Act; (iii) deprived Plaintiff of his Constitutional rights in violation of 42 U.S.C. §1983; (iv) retaliated against Plaintiff for his exercise of his Free Speech rights in violation of 42 U.S.C. §1983; and (v) constructively terminated the Plaintiff through the said discrimination, retaliation, and deprivation.

B.  An injunction (i) ordering Defendants to reinstate Plaintiff to his prior position of employment with the UM, with such retroactive promotions and benefits as Plaintiff would have received had he not been forced to resign, (ii) ordering Defendants to provide Plaintiff reasonable accommodations necessary for Plaintiff to perform his essential job functions, and (iii) prohibiting any further acts of discrimination or retaliation by Defendants;

C.  Compensatory damages in an amount to be proven at trial including, but not limited to, loss of past and future earnings and earning capacity, loss of

career opportunities, loss of employment benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of his choice;

D. Exemplary and punitive damages in whatever amount Plaintiff is found to be entitled;

E. An award of interest, costs, and actual attorney fees;

F. Whatsoever other relief that this Honorable Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims, defenses, and issues that may be tried to a jury.

Dated: May 27, 2022                    HEED LAW GROUP, PLLC

/s/ Thomas P. Heed (P66991)
Thomas P. Heed (P66991)
Attorney for Plaintiff
2723 South State Street
Suite 150
Ann Arbor, Michigan 48104
(734) 794-4757
(734) 794-4712
theed@heedlawgroup.com