UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY THIRY,

                                Civil Case No. 22-cv-11167

    Plaintiff,

v.                                HON. MARK A. GOLDSMITH

BOARD OF REGENTS OF THE
UNIVERSITY OF MICHIGAN et al.,

    Defendants.
_____/

**OPINION & ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (Dkt. 24)**

Plaintiff Timothy Thiry brought this case against Defendants the Board of Regents of the University of Michigan and three of its employees, alleging discrimination and retaliation under Section 504 of the Rehabilitation Act and unlawful restrictions of protected activity and retaliation under the First Amendment. Compl. (Dkt. 1)

Before the Court is Defendants' motion for summary judgment (Dkt. 24).[1] For the reasons stated below, the Court grants the motion in part and denies it in part.

## I.    BACKGROUND

Until July 29, 2021, Thiry was employed by the University of Michigan. Def. Statement of Material Facts (SOMF) ¶ 1 (Dkt. 24); Compl. ¶ 5. During Thiry's employment, Defendant Camie Munsell was his supervisor; Defendant Stephen Brabbs was Munsell's supervisor. Def.

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motions, the briefing includes Thiry's response (Dkt. 27) and Defendants' reply (Dkt. 28).

1

SOMF ¶¶ 2–3; Compl. ¶¶ 6–8. Defendant Sharon Curry is a generalist with the University of Michigan Human Resources department. Def. SOMF ¶ 4; Compl. ¶ 9.

In his complaint, Thiry alleges that he suffers from a substance-use disorder for which he received in-patient treatment beginning in February 2021 and ending in April 2021, when he returned to work at the University. Compl. ¶¶ 30–37. He alleges that, after his return, Munsell created a hostile work environment by making derogatory comments about Thiry's substance-use disorder to others, berating him in front of others, and disclosing confidential information about his substance abuse treatment to others, without his permission. Id. ¶¶ 40–49. According to Thiry, Munsell encouraged other employees to contribute to the hostile work environment, and some of them did so. Id. ¶¶ 50–57.

Thiry sent a series of emails to Munsell in June 2021. Def. SOMF ¶¶ 14–15; 6/3/21 Email at PageID.258 (Dkt. 24-7); June Emails at PageID.261–292 (Dkt. 24-8). Munsell forwarded the emails to Curry and Brabbs, stating that the emails were making her "nervous" and that she was "not feeling comfortable." Def. SOMF ¶ 15; June Emails at PageID.261. Munsell's complaints about these emails led to a meeting between Thiry and Curry during which Thiry complained of an "unstable work environment." Def SOMF ¶ 20; Fink Meeting Notes at PageID.330 (Dkt. 24-14). Curry told Thiry that he could not contact Munsell or any other University employees after hours "for what could be considered inappropriate, offensive, or non-work-related topics." Def. SOMF ¶ 17; Curry Meeting Notes at PageID.302 (Dkt. 24-10).

Over the next month, Thiry sent text messages to Curry and emails to Brabb, some outside of work hours. Def. SOMF ¶ 18; Curry Text Messages at PageID.304–322 (Dkt. 24-11); Brabbs Emails at PageID.324–326 (Dkt.24-12). Thiry later attended another meeting with Curry, on July 1, 2021, during which Thiry complained that Munsell "hates me because I take sick time" and told

2

Curry he would be contacting Michigan's Office of Institutional Equity (OIE) regarding his claim. Def. SOMF ¶¶ 19–21; Curry Meeting Notes at PageID.328 (Dkt.24-13).

On June 21, 2021, Munsell issued Thiry a two-day disciplinary layoff for "Negligent/Careless Work Performance." Def. SOMF ¶ 22; Disciplinary Layoff at PageID.351 (Dkt. 24-18). Thiry filed a grievance regarding the layoff. Def. SOMF ¶ 22. On July 19, 2021, Thiry was placed on suspension from work with pay pending the outcome of an investigation into his behavior conducted by University personnel. Def. SOMF ¶ 23.

The University held a Disciplinary Review Conference regarding Thiry on July 27, 2021. Def. SOMF ¶¶ 6, 24; DRC Meeting Notes at PageID.355–367 (Dkt. 24-20). The purpose of the DRC, as described in the meeting notes, was "to provide an opportunity for discussion when discharge is contemplated." DRC Meeting Notes at PageID.355. The next day, Curry told Thiry that the outcome of the DRC was that Thiry would be terminated from his position with the University. Def. SOMF ¶ 8; (citing Thiry Dep. at 91 (Dkt. 24-3)). After conferring with the president of his Union, Clint Fink, Thiry asked for, and was given, the opportunity to retire instead. Def. SOMF ¶ 25.

On July 29, 2021, Thiry signed a Settlement Agreement and Release of Liability. Def. SOMF ¶ 5; Settlement Agreement at PageID.237–238 (Dkt. 24-2). The Settlement Agreement released the University of Michigan from liability according to the following paragraphs:

> This Settlement Agreement and Release of Liability (Agreement) confirms the parties' agreement to completely settle any issues resulting from the Disciplinary Review Conference (DRC) held on Tuesday, July 27, 2021 with Timothy Thiry and grievance #10889 challenging the June 21, 2021 two-day disciplinary layoff issued to Mr. Thiry for negligent/careless work performance.
>
> …
>
> 3) This Agreement represents a full and final settlement of the DRC. There will be no grievance or arbitration filed by Mr. Thiry or the Union regarding the DRC. The

3

parties further agree that there shall be no further claims, demands, or actions related to the DRC.

…

4) This Agreement represents a full and final settlement of grievance #10889, which is withdrawn. The parties further agree that there shall be no further grievance, claims, demands or actions related to the discipline that was the subject of grievance #10889.

Settlement Agreement at PageID.237.

Thiry filed this lawsuit in May 2022, claiming that Defendants discriminated against him because of his substance-use disorder. Compl. ¶¶ 104–149. He brings claims under Section 504 of the Rehabilitation Act, alleging that Defendants created a hostile work environment and constructively discharged him, and claims under 42 USC § 1983, alleging that Defendants unlawfully limited his right to engage in free speech and retaliated against him for exercising his First Amendment rights. Id.

## II.     ANALYSIS[2]

The Court first addresses Thiry's claims brought under Section 504 of the Rehabilitation Act, and then turns to Thiry's First Amendment claims brought under § 1983.

### A. Rehabilitation Act Claims

Thiry alleges both discrimination and retaliation under Section 504 of the Rehabilitation Act. Compl. ¶¶ 104–126. Defendants argue that both claims are barred by the Settlement Agreement Thiry signed in July of 2021. Br. Supp. Mot. at 9–17. Thiry disagrees, arguing that

---

[2] In assessing whether a party is entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). A court will grant a motion for summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1985).

the Settlement Agreement does not cover the present lawsuit. Resp. at 13–19. The Court concludes that there is a fact issue about that.

The Settlement Agreement is explicit in completely settling any issues related to the DRC or grievance #10889. The DRC was held to discuss Thiry's pattern of insubordination. DRC Meeting Notes at PageID.355. The discrimination allegations that form the basis of Thiry's Rehabilitation Act claims—that Defendants discriminated against Thiry due to his disability and that he was constructively discharged as retaliation for raising that discrimination to Human Resources, see Compl.—were not raised during the DRC. See DRC Meeting Notes at PageID.355–367. The grievance, filed in response to the two-day disciplinary layoff Thiry received for negligent/careless work performance, similarly had no relation to the discrimination allegations that form the basis for these claims.

Defendants argue that, because the DRC resulted in the University's decision to terminate Thiry, the language in the Settlement Agreement prohibiting Thiry from filing "further claims, demands or actions related to the DRC" extends to prohibit Thiry from filing any claim related to termination. Br. Supp. Mot. at 13, 17. But, as Thiry points out, the Settlement Agreement does not mention termination and includes no general clauses settling any future claims relating to his employment or his termination—clauses that could have easily been included. Resp. at 15.

Defendants also argue that "[t]he Settlement Agreement and Release of Liability could not very well have made specific reference to settling or waiving any purported claim of disability discrimination, since Thiry had never brought that allegation up at any time." Br. Supp. Mot. at 12 n.1. This is unpersuasive for two reasons. First, as noted above, settlement agreements may contain general protections against future liability that cover claims unknown at the time of the agreement's execution. Second, Defendants appear to argue that the Settlement Agreement could

5

not have possibly covered the claims brought in this lawsuit—while simultaneously arguing in their motion that the Settlement Agreement <u>does</u> cover the claims brought in this lawsuit. Defendants do not recognize, much less resolve, this contradiction.

Defendants cite two cases in support of their argument that the Settlement Agreement bars Thiry's Rehabilitation Act claims.[3] Neither case is factually analogous. In <u>Sako v. Ohio Dep't of Admin. Servs.</u>, 278 F. App'x 514, 516 (6th Cir. 2008), the court found a settlement agreement to bar a plaintiff's Title VII claim where the language of the agreement explicitly required the plaintiff to withdraw the grievance that formed the basis for the Title VII claim. There is no such language in the Settlement Agreement in this case. In <u>Fontana v. Lincoln Park Police Dep't</u>, No. 20-10199, 2022 WL 4137273, at *3 (E.D. Mich. Sept. 12, 2022), the court found a settlement agreement to bar the plaintiff's employment discrimination claim where the agreement included the requirement that the plaintiff "release and forever discharge the city . . . from all claims, whether past, present or future, which arose or are in any way connected with this Agreement and his demotion." That language is much more expansive than the language included in the Settlement Agreement at issue here. The Court finds that the language of the Settlement Agreement Thiry signed raises a fact issue as to whether the language precluded him from raising the claims filed in this lawsuit. A jury must resolve the issue.[4]

Defendants also argue that (i) there is no individual liability under Section 504 of the Rehabilitation Act, and (ii) damages for emotional distress are not recoverable under Section 504

---

[3] Br. Supp. Mot. at 14–17 (citing <u>Sako v. Ohio Dep't of Admin. Servs.</u>, 278 F. App'x 514 (6th Cir. 2008) and <u>Fontana v. Lincoln Park Police Dep't</u>, No. 20-10199, 2022 WL 4137273 (E.D. Mich. Sept. 12, 2022)).

[4] Thiry also argues that estoppel and unconscionability bar enforceability of the Settlement Agreement. Resp. at 15–19. Because the Court does not find that the Settlement Agreement precludes this lawsuit, it need not address these issues.

of the Rehabilitation Act. Br. Supp. Mot. at 17–18. Thiry does not argue either point; he states that he does not allege individual liability under Section 504 of the Rehabilitation Act and concedes that damages for emotional distress are no longer recoverable under the Act. Resp. at 22–23. The Court grants summary judgment in favor of all Defendants as to Thiry's claim for emotional distress damages related to his Rehabilitation Act claims. To the extent that the Rehabilitation Act claims were brought against the Individual Defendants, the Court grants summary judgment in their favor as to these claims.

As the Court finds the Settlement Agreement does not bar Thiry's Rehabilitation Act claims, and Defendants have provided no alternate argument for summary judgment in their favor on Thiry's Rehabilitation Act claims against the Board of Regents, the Court finds that those claims survive summary judgment as to the Board of Regents.

### B. First Amendment Claims

Thiry brings two claims under § 1983, alleging unlawful restriction of free speech and retaliation under the First Amendment. Compl. ¶¶ 127–149. Defendants argue that these claims fail because neither the Board of Regents nor the Individual Defendants in their official capacities are "persons" subject to suit under § 1983. Br. Supp. Mot. at 18–21. Thiry concedes that the Board of Regents is not a person under § 1983. Regarding the Individual Defendants, Thiry argues that he has alleged claims against them in their individual capacities and that therefore the § 1983 claims against them should survive summary judgment. The Court agrees with Thiry.

States and state employees sued in their official capacities are not "persons" under § 1983, and, therefore, cannot be held liable for money damages. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). The Sixth Circuit has held that plaintiffs seeking money damages under § 1983 must set forth clearly in their pleadings that they are suing state officials as individuals, rather

7

than officials. See Wells v. Brown, 891 F.2d 591, 592 (6th Cir. 1989). However, in a later en banc decision, the Sixth Circuit proceeded to "clarify" that, while Wells requires a plaintiff to "clearly notify" defendants of an intent to seek individual liability, such notice does not to be given in the complaint. See Moore v. City of Harriman, 272 F.3d 769, 772 (6th Cir. 2001). Instead, "reviewing the course of proceedings is the most appropriate way to determine whether such notice has been given . . . ." Id. at 775. Thus, "subsequent filings in a case may rectify deficiencies in the initial pleadings." Id. at 774.

The en banc decision relied on Abdur-Rahman v. Mich. Dep't of Corrs., 65 F.3d 489, 491 (6th Cir. 1995), in which the Sixth Circuit found sufficient notice that the plaintiff was suing a defendant in his individual capacity despite the complaint's failure to state that explicitly. The plaintiff's response to the defendant's motion for summary judgment "ma[de] it clear that he intended to sue [the defendant] in his individual and official capacities." Id.

The same is true here. Thiry's complaint does not specify in what capacity he sues the Individual Defendants—neither the term "individual capacity" nor "official capacity" is used in the complaint. However, in his response to Defendants' motion for summary judgment, Thiry makes clear that, with respect to his claim for damages under § 1983, he sues the Individual Defendants in their individual capacities. Resp. at 24.

Defendants have advanced no other arguments as to why they are entitled to summary judgment on Thiry's § 1983 claims. With respect to Thiry's § 1983 claims for money damages, the Court grants summary judgment in favor of the Board of Regents and denies summary judgment as to the claims against the Individual Defendants. Because official-capacity claims are not barred by the Eleventh Amendment where a plaintiff seeks only prospective equitable relief, see McCormick v. Miami Univ., 693 F.3d 654, 662 (6th Cir. 2012), the Court denies summary

judgment with respect to Thiry's § 1983 claims for declaratory and injunctive relief as to any Defendant.

### III. CONCLUSION

For the reasons explained above, the Court grants in part and denies in part Defendants' motion for summary judgment (Dkt. 24). The Court grants summary judgment in favor of all Defendants as to Thiry's claim for emotional distress damages under Section 504 of the Rehabilitation Act (Counts 1 and 2). Also, with respect to Thiry's claims brought under the Rehabilitation Act, the Court grants summary judgment as to the Individual Defendants and denies summary judgment as to the Board of Regents. With respect to Thiry's claims for monetary damages brought under § 1983 (Counts 3 and 4), the Court grants summary judgment as to the Board of Regents and denies summary judgment as to the Individual Defendants. With respect to Thiry's claims for declaratory and injunctive relief under § 1983, the Court denies summary judgment as to all Defendants.

SO ORDERED.

Dated: September 27, 2024       s/Mark A. Goldsmith
   Detroit, Michigan      MARK A. GOLDSMITH
                               United States District Judge